Mary SCOTT, Plaintiff,

v.

**LEAVENWORTH UNIFIED SCHOOL DISTRICT NO. 453, Defendant.**

No. CIV.A. 99–2098–GTV.

United States District Court,
D. Kansas,
Kansas City Division.

Dec. 23, 1999.

See also, 78 F.Supp.2d 1198.

Albert F. Kuhl, Lenexa, KS, for Plaintiff.

Mark A. Ferguson, Tammy M. Somogye, lathrop & Gage L.C. Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter is before the Court on plaintiff's Motion to Compel Discovery (doc. 39). It is also before the Court on defendant's request that the Court enter a protective order, preventing the discovery of the documents of which plaintiff seeks to compel production. (*See* doc. 40 at 7.)

## I. PLAINTIFF'S CLAIMS

Plaintiff asserts claims under Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111, *et seq.* (ADA). Plaintiff alleges that she suffers from chronic depression and a back condition that are covered disabilities under the ADA. She claims that defendant denied her request for reasonable accommodation of her alleged disabilities and then refused to renew her employment contract and terminated her employment as a school psychologist, because of her alleged disabilities and her request for accommodation. Plaintiff also asserts a state law claim for retaliatory discharge, alleging that defendant refused to renew her contract and terminated her employment because she suffered a work-related injury.

## II. THE REQUESTS AT ISSUE AND DEFENDANT'S OBJECTIONS

Plaintiff moves to compel defendant to answer two requests for production (Request Nos. 12 and 13) that seek the personnel files and other records concerning three of plaintiff's co-workers.[1] Plaintiff states in her Motion that these three individuals held positions with defendant similar to plaintiff's and that they were supervised by the same person who supervised plaintiff, Dr. Lynn Ahrens.

Plaintiff provides the following information relating to these three individuals:

Plaintiff possesses reason to believe that certain of these employees either were provided reasonable accommodations which were geared toward an emotional

condition, e.g. employee Melissa Boone, or otherwise experience difficulty in their performance, e.g. Myron Welton and Larry Colboch.

Plaintiff's Motion to Compel Discovery (doc. 39) at 4.

### A. Request for Production No. 12

Specifically, Request for Production No.12 asks defendant to produce the following documents relating to the three individuals: (1) their personnel files; (2) "documents describing discipline provided" to the three individuals; and (3) "documents describing ... accommodations provided to (if any)" the three individuals. Defendant objects to this request on two grounds.

First, defendant objects to the request because it seeks irrelevant information. Defendant asserts that the ADA requires an "individualized inquiry" and that these documents have no bearing on defendant's alleged treatment of plaintiff or whether defendant acted on the basis of plaintiff's alleged disabilities or workers' compensation claim. Defendant argues that plaintiff is attempting to discover evidence to support a *disparate treatment theory* for her discrimination claims, when, in fact, a disparate treatment theory has no bearing on a *failure to accommodate ADA claim.* Defendant also contends that these three employees are not similarly situated to plaintiff, apparently arguing in the alternative that even if plaintiff had a basis to compare her treatment with the treatment afforded other employees, she could not compare herself to these individuals.

Second, defendant objects to producing these documents because of confidentiality issues. Defendant asserts that the personnel files of its employees are confidential and cannot be released. It also asserts that the ADA and it regulations expressly prohibit the disclosure of any information relating to the medical condition or history of an employee except in three enumerated exceptions, none of which applies here.

---

1. Plaintiff's Request for Production No. 13 requests documents relating to *all* employees under plaintiff's supervisor's direct supervision during a certain time period. Plaintiff has agreed to limit her request to three employees of defendant. The Court will therefore limit its analysis and this Order to those three individuals.

## B. Request for Production No. 13

Request for Production No. 13 requests all documents "issued to, or authored by, Dr. Lynn Ahrens, concerning the physical or mental well-being" of the above-mentioned three employees for the period January 1, 1995 to the present. Defendant objects to this request based on relevancy and the confidentiality provisions of the ADA and its regulations.[2]

## III. ANALYSIS

### A. Relevancy of the Requested Documents

The Court will first address defendant's objections as to relevancy. Relevancy is broadly construed, and a request for discovery should be considered relevant if " 'there is any possibility that the information sought may be relevant to the subject matter to the action.' " *Etienne v. Wolverine Tube, Inc.,* 185 F.R.D. 653, 656 (D.Kan.1999) (quoting *Smith v. MCI Telecomm. Corp.,* 137 F.R.D. 25, 27 (D.Kan.1991)). "A request for discovery ... should ordinarily be allowed unless *it is clear* that the information sought can have *no possible* bearing on the subject matter of the action." *Snowden v. Connaught Lab.,* 137 F.R.D. 336, 341 (D.Kan. 1991) (emphasis added). When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery "either does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Etienne,* 185 F.R.D. at 656 (quoting *Aramburu v. Boeing Co.,* No. 93–4064–SAC, 1994 WL 810246, at *1 (D.Kan. Sept. 22, 1994)).

The Court is not persuaded by defendant's argument that the requested documents are irrelevant. Defendant fails to recognize that the requested documents could have a possible bearing on plaintiff's failure to accommodate claim. Whether certain accommodations were made for other employees is relevant or at least has the potential to be relevant as it relates to any defense asserted by the defendant that it was unable to accommodate the plaintiff. Under the proof scheme for establishing a failure to accommodate claim, the plaintiff must produce evidence sufficient to make a prima facie showing that accommodation is possible. *Bacon v. Great Plains Mfg., Inc.,* 958 F.Supp. 523, 530 (D.Kan.1997). The burden of production then shifts to the employer to present evidence of *its inability to accommodate* the plaintiff. *Id.* (citations omitted).

Given this proof scheme, whether defendant in this case accommodated *another employee* would be relevant to whether defendant could or could not accommodate *plaintiff.* The Court cannot say then that documents describing any accommodations made to the three individuals and the other documents requested in plaintiff's Request for Production No. 12 can have "no possible bearing" on plaintiff's failure to accommodate claim.

The same is true with respect to plaintiff's Request for Production No. 13. Documents relating to the "physical or mental well-being" of the three employees could possibly shed light on whether any of the three individuals had a protected disability and/or whether any accommodations were made. For these reasons, the Court concludes that defendant has failed to meet its burden to show that the requested documents are irrelevant.

### B. Confidentiality

The Court will now turn to defendant's arguments relating to the confidentiality of the requested documents. As noted above, this argument is two-fold. Defendant first argues that the personnel files should not be produced because they contain confidential information about other employees. The Court is not persuaded by this argument. This Court has routinely held that

---

**2.** In its response to Request No. 13, defendant also objected on the basis that the phrase "physical or mental well-being" was vague and ambiguous. Defendant, however, has not reasserted that objection or discussed it in its response to the Motion to Compel, and, thus, the Court will deem this objection waived.

personnel files, where relevant or reasonably calculated to lead to the discovery of admissible evidence, are discoverable. *See, e.g., Kelley v. Schwabauer,* No. 95–1572–MLB, 1996 WL 447807, at *2 (D.Kan. July 12, 1996).

Defendant's second argument is that the documents are statutorily protected from disclosure under the confidentiality provisions of the ADA. The ADA and its regulations expressly prohibit the disclosure of information about the medical condition or history of an employee when that information is obtained through any medical examination or in response to a medical inquiry allowed under the ADA. Both the statute and the regulations provide that such medical information must be collected and maintained on separate forms and kept in separate medical files and "treated as a confidential medical record." 42 U.S.C. § 12112(d)(3)(B); 29 C.F.R. § 1630.14(c)(1). The statute and regulations set forth three exceptions to these confidentiality rules:

> (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
> (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
> (iii) government officials investigating compliance with [the ADA] shall be provided relevant information on request.

*Id.*

■ The Court has been unable to locate case law from any jurisdiction addressing whether the ADA confidentiality provisions apply to the discovery of medical information and documents in civil litigation. There are, however, cases that have examined prohibitions against disclosure in the context of other statutes. Those cases recognize that in some circumstances a statutory prohibition against disclosure of information or documents may result in a "privilege" within the meaning of the Federal Rules of Civil Procedure that shields the information from disclosure. For example, in *Baldrige v. Shapiro,* 455 U.S. 345, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982), the United States Supreme Court held that the confidentiality provisions of the Census Act embodied explicit Congressional intent to preclude *all* disclosure of raw census data reported by or on behalf of individuals. *Id.* at 361, 102 S.Ct. 1103. The "strong policy" of nondisclosure indicated that "Congress intended the confidentiality provisions to constitute a 'privilege' within the meaning of the Federal Rules" *Id.* The Court recognized that one primary purpose of the confidentiality provisions was to encourage public participation and maintain public confidence that the information given to the Census Bureau would not disclosed. *Id.* It reasoned that "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress." *Id.* The Court therefore held that the information was privileged and immune from discovery. *Id.* at 362, 102 S.Ct. 1103.

Applying such reasoning to the instant case, the Court concludes that the ADA's prohibitions against disclosure of medical information do not amount to a "privilege" that protects the requested documents from disclosure. The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and to assure equality of opportunity in employment, full participation and economic self-sufficiency for individuals with disabilities. 42 U.S.C. § 12101(a)(8). One form of discrimination prohibited by the ADA is a medical examination or inquiry of an employee that is not job-related or consistent with business necessity. *See* 42 U.S.C. § 12112(d). Such an examination or inquiry could easily reveal the nature or severity of a disability and therefore lead to the segregation of, and/or discrimination against, the employee. The ADA's confidentiality provisions ensure that in those situations where a medical examination or inquiry is allowed under the ADA, *i.e.,* when job-related or consistent with business necessity, the information is disclosed only to those with a legitimate need for the information. In other words, the confidentiality provisions further the purpose behind the ADA's goal of ensuring equal employment opportunities for the disabled.

Disclosure of the medical information in this case would have a similar purpose—it has the potential to help plaintiff establish his failure to accommodate claim. Surely, Congress never intended for a defendant charged with violating the ADA to use the ADA's confidentiality provisions to impede a plaintiff's ability to discover facts that might help the employee establish his/her claims. For these reasons, the Court concludes that disclosure of the requested documents is consistent with and not contrary to the purpose of the ADA.

## IV. CONCLUSION

In light of the foregoing, the Court will grant plaintiff's Motion to Compel Discovery (doc. 39). The Court will, however, require that the documents be disclosed subject to a protective order that would prohibit their disclosure except as necessary for the litigation of this case. The parties are directed to prepare and submit to the Court an appropriate order protecting the confidentiality of the requested documents. Defendant is directed to serve amended responses to Plaintiff's Request for Production Nos. 12 and 13 and produce the documents responsive to those requests, subject to the protective order, on or before January 7, 2000. The production shall take place at the offices of plaintiff's counsel or at any other location agreed upon by the parties.

The Court will deny defendant's request (*see* doc. 40 at 7) that the Court enter a protective order preventing the discovery of the documents that are the subject of plaintiff's Motion to Compel.

IT IS SO ORDERED.